992

No. 77–1556. BERG ET AL. v. BERGER. C. A. 7th Cir. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari denied. 

MR. JUSTICE POWELL, with whom MR. JUSTICE REHNQUIST joins, dissenting.

Respondent, a nontenured public school teacher, was dismissed from her job in May 1975, following months of disagreement and dissension with her supervisors. The situation came to a head about six weeks before her dismissal. An informal conference was arranged and respondent, accompanied by her counsel, met with several school administrators to discuss her performance as a teacher. Although the meeting lasted for some time, it was confined primarily to an extensive cross-examination by respondent's counsel of the school administrators. The meeting was terminated inconclusively because respondent's counsel insisted upon a "specific written statement of charges" as a precondition of his client's full participation in the meeting and "never allowed her to speak."*

---

*Dr. Robinson, one of the defendants, took notes of the meeting. His record of the events leading to the adjournment of the meeting was as follows:

"*Mr. Ditkowsky* [counsel for Miss Berger]: Again, Dr. Robinson, I respectfully submit that since we do not have a specific written statement of charges, and furthermore, since the nature of some of these charges are components of a Court suit we already have against the Board of Education, I do not feel that my client's participation in this meeting is proper. . . .

"*Dr. Robinson:* Mr. Ditkowsky, will you allow your client to respond to *any* of the reported activities [?]

"*Mr. Ditkowsky:* Yes, I will allow her to respond, but only for the sake of accommodation. Further, I would like the record to show that there should be a Court reporter present, and the charges should be made specifically in writing.

"(At this point the matter of impersonating a parent was discussed at great length. It turned into an extensive cross-examination by Mr. Ditkowsky

After conferring among themselves, the administrators, petitioners here, decided that the problems arising from respondent's conduct were sufficiently severe to merit an immediate recommendation of dismissal to the Board of Education. Their report to the Board referred to over 90 memoranda respondent had written to her principals during the past year about urgent problems with her students, emergencies which upon investigation were determined to be nonexistent or exaggerated; over

---

of Miss O'Shea and Mrs. Berg [principals under whom Miss Berger served]. Neither Miss O'Shea nor Mrs. Berg were prepared with supportive documentation nor were they prepared to undergo an extensive cross-examination. This cross-examination went on for twenty to thirty minutes, and it appeared that Mr. Ditkowsky was taking advantage of the principals. Occasionally Miss Berger tried to volunteer some information, but Mr. Ditkowsky never allowed her to speak. It took about thirty minutes to cover one reported activity, when Mrs. Whitten [counsel for the school board] intervened.)

"*Mrs. Whitten:* Perhaps we should postpone this meeting to a time when we can supply you with a specific statement of charges and a time when the line administrators could have their supportive documentation available to them.

"*Mr. Ditkowsky:* We would be agreeable to this.

"*Dr. Robinson:* We will have to investigate with our Law Department as to whether or not under the State Statute it would be necessary for us to provide you with a written statement of charges which can be reviewed by you prior to any action by our Board of Education. You will be notified."

The Law Department advised petitioners that another meeting was not necessary. Instead, counsel for respondent was invited to review the documentation of Miss Berger's misconduct which the principals had compiled.

Respondent did not dispute this version of these events, but rather adopted it in her own pleadings. These notes provided substantial support for Dr. Robinson's statement, contained in an answer to one of respondent's interrogatories, that "[t]he entire purpose of the conference, which was to give Miss Berger an opportunity to respond to the allegations, was thwarted by her attorney, who would not allow her to respond." Respondent did not controvert this statement by any counter-affidavit.

60 telephone calls to principals and parents, the majority of which were threatening and harassing; and five incidents in which she had called the police into her classroom without cause and in violation of school policy. The report mentioned one incident where respondent had impersonated a parent and threatened other parents with a lawsuit. Following petitioners' recommendation, the Board discharged respondent for insubordination and conduct unbecoming a teacher.

Respondent filed an action under 42 U. S. C. § 1983 in the United States District Court for the Northern District of Illinois, accusing petitioners of having engaged in a malicious conspiracy to violate her rights under, *inter alia,* the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. The District Court granted summary judgment for petitioners, ruling that "there is no genuine issue of fact to be submitted to the trier of fact" and concluding that petitioners "are entitled to a judgment as a matter of law." On appeal, the Seventh Circuit reversed. It perceived that the case turned on whether respondent had been deprived of a property or liberty interest without due process of law, and it found disputed issues of fact on this question. Respondent might be able to prove either that she had a property right to serve out the balance of her contract term or that the public dissemination of the charges against her created a stigma that infringed a protected liberty interest. Judge Pell dissented.

I would grant the petition for certiorari and summarily reverse. Even if respondent were able to prove the existence of a constitutionally protected property or liberty interest, it seems clear that the procedural requirements of the Due Process Clause were met on the facts of this case. Judge Pell appears to have been correct in observing:

"It needs no reading between the lines of the record presented to us to discern that the [petitioners], exercising their functions of operating the school system, terminated a non-tenured teacher who was seriously detrimental to

the proper accomplishment of the educational aims of the school."

With respect to the procedures followed here, Judge Pell noted:

"[T]his non-tenured teacher received the due process to which she was entitled by virtue of her status. She was given a meeting with school authorities who were willing to discuss with her and her attorney the difficulties which she was causing in the school where she was purporting to teach. The attorney's tactics on that occasion subverted the effort."

Our decisions in *Board of Curators* v. *Horowitz,* 435 U. S. 78 (1978); *Goss* v. *Lopez,* 419 U. S. 565 (1975); and *Cafeteria Workers* v. *McElroy,* 367 U. S. 886 (1961), have emphasized that the requirements of due process are flexible, varying according to the situation involved and interests implicated. It is abundantly clear that respondent and her supervisory authorities had been in a state of tension and disagreement for a period of months, and that respondent had full notice of the dissatisfaction with her performance. Finally, respondent was afforded a hearing with the appropriate school administrators at which she had the opportunity, with counsel present, to submit her views. It was at the instruction of her counsel that respondent did not speak in her own defense on this occasion. In sum, respondent received all process that she was due. See *Board of Curators* v. *Horowitz, supra,* at 85; *Goss* v. *Lopez, supra,* at 582.